IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:20-cr-00203-SMR-HCA |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON DEFENDANT'S MOTION |
| v. | ) | FOR A NEW TRIAL |
| | ) | |
| DARREON EARL WRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is a Motion for a New Trial by Defendant Darreon Earl Wright. He requests the Court vacate a jury verdict of guilty against him and order a new trial on the indictment. Defendant asserts the evidence presented at trial was insufficient to convict him of the crimes charged and the Court's instructions to the jury violated his Due Process rights under the Fifth Amendment.

## I. INTRODUCTION

### A. *Factual Background*[1]

On February 19, 2020, Defendant and another male, MWA[2], summoned Austin Shoemaker to the Sunburst Apartments in Des Moines, Iowa under the pretense of purchasing a large amount of marijuana from Shoemaker. Once Shoemaker arrived at the apartment complex, he met the pair in the pre-determined meeting spot—a stairwell on the first floor. Prior to Shoemaker's arrival, Defendant positioned himself behind a door, armed with a pistol. MWA brought Shoemaker to

---

[1] The facts are recounted in the light most favorable to the jury verdict. *See United States v. Lee*, 687 F.3d 935, 938 n.2 (8th Cir. 2012).

[2] Because he was a minor at the time of the robbery, the Court will refer to the other participant by his initials.

the stairwell area, and after he entered the enclosed area, Defendant emerged from behind the door brandishing a firearm. Rather than surrender the money he brought for the purchase—$6,900 in cash—Shoemaker attempted to disarm Defendant.

Defendant discharged the firearm three times during the struggle with two bullets hitting Shoemaker, one in the arm and the other in his chest. A stray bullet also hit Defendant in the hand. Shoemaker and his friend, Derek McCoy, then left the scene to go to the hospital. After MWA grabbed an empty duffle bag that Shoemaker had brought, they fled to an apartment on the third floor of the same building. Law enforcement responded to the report of gunshots where they located Defendant in the third-floor apartment, guided by the trail of blood left by Defendant from the gunshot wound to his hand.

B.  *Procedural Background*

On November 18, 2020, Defendant was indicted by a grand jury on three counts related to the robbery. He was charged with Conspiracy to Interfere with Commerce through Robbery in violation of 18 U.S.C. § 1951 (Count I); Interference with Commerce through Robbery also in violation of 18 U.S.C. § 1951 (Count II); and Possessing, Brandishing, and Discharging a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A) (Count III). [ECF No. 2]. Defendant proceeded to trial on all three counts. A two-day jury trial began on September 13, 2021. At the close of the Government's case-in-chief, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the Court denied. [ECF No. 54]. Defendant was convicted on all three counts on September 14, 2021. [ECF No. 60].

Defendant timely filed this Motion for a New Trial on September 22, 2021. [ECF No. 64]. He claims that the Government offered insufficient evidence for the jury to convict him of the

robbery charges and asserts one of the instructions deprived the jury of their authority to find a fact necessary for conviction. The Government resists the Motion. [ECF No. 65].

## C. *Standard of Review*

A court may vacate any judgment and order a new trial, upon a defendant's motion, within 14 days of a guilty verdict "if the interest of justice so requires." Fed. R. Crim. P. 33. Consideration of a Rule 33 motion is "within the sound discretion of the trial court," and the Court may "weigh evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1991)). Although the Court's discretion is "quite broad" the verdict must stand unless "a miscarriage of justice will occur," without a new trial. *Id.* Defendant presents two bases for a new trial.

First, he argues the evidence was insufficient for conviction. Acknowledging that there is sufficient evidence to sustain the verdict in the abstract, he contends this case runs the risk that "a serious miscarriage of justice may have occurred" due to the particular nature of the charges against him and evidence offered at trial. [ECF No. 64 ¶ 5] (Def.'s Motion for New Trial) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). Defendant argues that the evidence shows it is just as likely that the events were a drug transaction gone bad than a premeditated robbery.

Defendant's second argument in favor of granting the motion is that Final Instruction No. 9 violated his Due Process protections under the Fifth Amendment by instructing the jury as a matter of law that an element necessary for conviction—the interstate nexus of the robbery—was established by the evidence and, therefore, deprived the jury of its role as fact-finder regarding the fact in question. [ECF No. 64 ¶¶ 8–9].

When a guilty verdict is challenged for insufficient evidence, the Court must "view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999) (quoting *United States v. Smith*, 91 F.3d 1199, 1200 (8th Cir. 1996)). The verdict is to be upheld as long as "a reasonable minded jury could have found the defendant guilty beyond a reasonable doubt." *Id.* Although courts are authorized to weigh evidence and consider witness credibility when considering a motion for a new trial, they are cautioned that "such authority should be used cautiously and sparingly." *United States v. Lee*, 687 F.3d 935, 944 (8th Cir. 2012).

### D. Sufficiency of the Evidence

Prior to trial, Defendant made no fact stipulations and put the Government to its proof on all the elements for each of the three counts. The Government offered evidence primarily through testimony from law enforcement, Shoemaker, and McCoy which, in turn, was corroborated by security video from the apartment complex. The Government's theory at trial was that Defendant—who was familiar with the apartment complex—chose the particular stairwell because it was best suited for a robbery. The designated meeting spot was "the only stairwell in the building that was enclosed, had no cameras, and would create the fewest witnesses," the Government argued at trial and in its resistance to Defendant's Motion. [ECF No. 65 at 8].

The security camera footage depicted some of the events immediately prior to, during, and after the shooting. This footage included Defendant concealing himself in position in the stairwell before the altercation. Much can be gleaned from the footage about the events that night in the stairwell. Immediately after Shoemaker entered the stairwell, Defendant is seen emerging from behind the door with what appears to be a firearm in his hand. A struggle ensues where Shoemaker

appears to try to disarm Defendant and smoke from the discharge of the firearm soon fills the hallway. As Shoemaker and McCoy fled the scene, MWA returned into camera view to retrieve the empty duffle bag—which Defendant and MWA believed to contain money for the putative drug purchase.

The evidence offered by the Government at trial was substantial and overwhelming. Security camera footage, credible testimony from Shoemaker and McCoy, and the factual circumstances under which the robbery took place was ample evidence to "allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Muhlenbruch*, 634 F.3d 987, 1000 (8th Cir. 2011) (citation omitted). Defendant insists that "the evidence shows that the events that occurred could have just as likely been of a drug transaction which went awry as that of a robbery," [ECF No. 64 ¶ 7], but that appears to be very unlikely given the Government's evidence at trial, particularly the evidence that Defendant had laid in wait for Shoemaker. Furthermore, the standard on a Rule 33 motion requires the Court resolve evidentiary conflicts and interpretations in favor of the Government and accept all reasonable inferences which are consonant with the jury's verdict. *United States v. White*, 81 F.3d 80, 82 (8th Cir. 1996). This standard precludes consideration of Defendant's alternative theory of the evidence.

*E.  Due Process Violation*

Defendant also contends he is entitled to a new trial because one of the jury instructions directed the jury that "a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding." [ECF No. 64 ¶ 9] (quoting *United States v. White Horse*, 807 F.2d 1426, 1429 (8th Cir. 1986)). The jury instruction at issue is Final Jury Instruction No. 9, and the portion to which Defendant objects, reads:

> As a matter of law, you are advised that the local manufacture and distribution of illegal controlled substances substantially affect

>interstate commerce. You are further advised that marijuana is an illegal controlled substance for purposes of this case. Therefore, if the Government proves beyond a reasonable doubt that a robbery targeted a marijuana dealer's drugs or drug proceeds, the Government has proved beyond a reasonable doubt that commerce over which the United States has jurisdiction was affected. Money furnished, or intended to be furnished, by any person in exchange for a controlled substance constitutes drug proceeds.

[ECF No. 55 at 18]. Defendant insists this instruction was erroneous because if the jury found beyond a reasonable doubt "that a robbery targeted a marijuana dealer's drugs or drug proceeds," then the jurisdictional requirement is also satisfied. This argument was directly addressed and foreclosed by the United States Supreme Court in *Taylor v. United States*, 579 U.S. 301 (2016).

In *Taylor*, the Supreme Court considered whether the jurisdictional element of § 1951—whether a robbery "substantially affected" interstate commerce, thus implicating Congress's authority pursuant to the Commerce Clause—was an element that must be proven by the Government to obtain a conviction under the statute. *Taylor*, 579 U.S. at 302. The Court found that the answer was "straightforward and dictated" by its precedent on the Commerce Clause. *Id.* at 303. Because Congress has the authority to regulate the marijuana market, *Gonzales v. Raich*, 545 U.S. 1, 17 (2005), it is "a simple matter of logic that a robber who affects or attempts to affect even the intrastate sale of marijuana grown within the State affects or attempts to affect commerce over which the United States has jurisdiction." *Taylor*, 579 U.S. at 307.

Thus, as a matter of law, if the jury found beyond a reasonable doubt that a drug dealer's drugs or drug proceeds were the target of a robbery, that is enough to satisfy § 1951's requirement that the robbery affect commerce, which invokes the jurisdiction of the federal government to criminalize such activities. Final Jury Instruction No. 9 was a correct statement of the law, instructing the jury that if it determined beyond a reasonable doubt that the target of the robbery

were the drugs or drug proceeds of a drug dealer, then the United States has jurisdiction to criminalize it under the Commerce Clause.  Defendant's Motion for a New Trial is DENIED.

IT IS SO ORDERED.

Dated this 3rd day of December, 2021.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT