IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal  Number 4:20-cr-00203 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| DARREON EARL WRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW  Darreon Earl Wright, Defendant in the above-captioned  case, by and through counsel, and submits the following Sentencing Memorandum to the Court:

## I. TABLE OF CONTENTS

II. TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Sentencing Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Other Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ISSUES AT SENTENCING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B. Guidelines Calculations and Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    C. Evidence at Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    i. the nature and circumstances of the offense and the history and characteristics of the defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    ii. the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    iii. the kinds of sentences available. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    iv. the kinds of sentence and the sentencing range established the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

v. any pertinent policy statement issued by the Sentencing Commission. . . . . . . . . . . . . 14

vi. the need to avoid unwarranted sentence disparities among defendants with similar records
    who have been found guilty of similar conduct . . . . . . . . . . . . . . . . . . . . . . . . . . 14

vii. the need to provide restitution to any victims of the offense . . . . . . . . . . . . . . . . . . 23

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## II. TABLE OF AUTHORITIES

*Statutes*

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT)
Act. Pub. L. No. 108-21, 117 Stat. 650 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sentencing Guidelines*

USSG § 1B1.1, comment. (n.1(K)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

USSG § 2B3.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

USSG § 2B3.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

USSG § 2B3.1(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

USSG § 2B3.1(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

USSG § 2B3.1(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

USSG § 2B3.1(b)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

USSG § 2B3.1(b)(4)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

USSG § 2K2.4, comment (n. 4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

USSG § 3E1.1 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

USSG § 3E1.1, comment (backg'd) (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

USSG § 3E1.1, comment (backg'd) (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

USSG § 3E1.1, comment, (n. 2, 3) (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

USSG, App. C, amendment 351 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

USSG, App. C, amendment 459 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

USSG, App. C, amendment 649 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

USSG, Ch. 5, Pt. A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cases*

*Missouri v. Frye*, 566 U.S. 134 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Jimenez-Perez*, 659 F.3d 704 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Schau*, 1 F.3d 729 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Stevens*, 580 F.3d 718 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Other Authority*

Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2019 Annual Report of the Director . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2020 Annual Report of the Director . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2018 Annual Report of the Director . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Department of Justice, Bureau of Justice Statistics, Criminal Victimization, 2020 . . . . . . . . . . 14

Don Hummer (2020): *United States Bureau of Prisons' Response to the COVID-19 Pandemic*, Victims & Offenders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hindelang, Criminal Justice Research Ctr., Univ. at Albany, *Sourcebook of Criminal Justice Statistics Online,* tbl.5.22.2010 (Kathleen Maguire ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

O. D. Sanderford, *The Feeney Amendment, United States v. Booker, and New Opportunities for the Courts and Congress*, 83 N.C. L. Rev. 736 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save*

*It,* National Association of Criminal Defense Lawyers (2018). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States Sentencing Commission, *Quick Facts, Robbery Offenses, FY 2019* . . . . . . . . . . 16

United States Sentencing Commission, *Quick Facts, Robbery Offenses, FY 2020* . . . . . . . . . . 16

### III. ISSUES AT SENTENCING

*A. Procedural Background.* On April 7, 2020, a three count trial information was filed in

the Iowa District Court for Polk County, charging Darreon Earl Wright with the charges of

Attempt to Commit Murder in violation of Iowa Code § 707.11; Robbery in the First Degree in

violation of Iowa Code §§ 711.1(1)(a) and 711.2; and Conspiracy to Commit a Forcible Felony

in violation of Iowa Code §§ 706.1 and 706.2(1). On July 29, 2020 a plea agreement was reached

and the charge of Attempt to Commit Murder was amended by the State of Iowa to the charge of

Willful Injury in violation of Iowa Code § 708.4(2). The amended count charged that "the

defendant did an act that was intended to cause serious injury to Austin Garcia Shoemaker,

which was not justified, and which caused bodily injury to Mr. Garcia Shoemaker." On that same

date a written petition to plea guilty pursuant to *North Carolina v. Alford* was filed by counsel for

Mr. Wright. The petition was signed by Mr. Wright. As a part of the petition he stated:

> The charges in their present form include one count of Attempted Murder and one
> count of Robbery in the First Degree, two class B forcible felony offenses. Under
> Iowa law, I would not be eligible for probation if convicted of these particular
> offenses. Moreover, if convicted of these offenses I would he subject to
> mandatory minimum sentences. If convicted of Attempted Murder, the mandatory
> minimum sentence of confinement would be 17.5 years. If convicted of Robbery
> in the First Degree, the mandatory minimum sentence of confinement would range
> from 12.5 years to 17.5 years. With consecutive sentencing, the mandatory
> minimum sentence of confinement could range from 30 to 35 years. Under the
> terms of the plea agreement reached with the State of Iowa, I have the opportunity
> to plead guilty to a class D felony nonforcible felony which carries a maximum
> possible penalty of imprisonment not to exceed five (5) years. By pleading guilty
> to a non-forcible felony I am eligible for a suspended sentence and probation

4

under Chapter 907 of the Iowa Code. Furthermore, the Court also has the option of deferring judgment in my case if I am in fact "deferred eligible." The State's plea offer therefore affords me the potential opportunity to avoid a formal record of conviction in this matter if the Court, in the exercise of its discretion, does in fact defer judgment in my case. If I proceed to trial and am convicted of the charges in their present form , a mandatory term of imprisonment of up to 35 years could be mandated by the Court. The State's plea offer eliminates all of these adverse sentencing ramifications. Finally, the State's plea offer allows me the opportunity to he released from custody pending sentencing. This aspect of the plea offer affords me the opportunity to live in the community and prove to the Court that I can successfully complete community-based probation supervision.[1]

Under the plea agreement, sentencing was left to the discretion of the District Court. Mr. Wright pled guilty and was released from custody on July 29, 2020. He had been initially arrested and held in custody since March 2, 2020. A presentence report was prepared.

On September 10, 2020 sentencing was held before the Honorable Judge Sarah Crane. At the sentencing hearing the state prosecutor made the following sentencing recommendation:

Your Honor, in this case the parties did reach a plea agreement. The defendant was originally charged with some significant charges, and the agreement in this case was that the State would amend Count I to willful injury causing bodily injury, a class D nonforcible felony, and the defendant would plead guilty to that, and then the parties would agree that he would be released pending sentencing and that  the parties would be free to argue for any legal sentence at the time of sentencing and that the remaining counts would be dismissed at the time of sentencing assuming the defendant didn't commit any new offenses or fail to appear for sentencing.

As far as I know, the defendant has kept up  his end of the bargain for that part of the plea deal, so we – we will be following the plea agreement. We will be asking the Court to dismiss those remaining  counts.

As the Court has noted, the Presentence Investigation Report has been prepared. I have reviewed that. Its recommendation is probation for Mr. Wright; although, it does note its – the writer notes their concerns about the nature of these charges, and that's my in concern in this case as well.

---

[1]A copy of the written plea is attached as Exhibit 1.

Mr. Wright does not have a significant criminal history. He is a young man who has no adult criminal history and has very minimal juvenile criminal history; however, this was a big one. The nature of this offense is very troubling, and it should give concern to the Court about the defendant's behavior in the future.

In this case, the defendant did acknowledge harming another person. He actually shot somebody with a gun. He admitted that this was done with the intent to seriously injure that person. It didn't kill the person, but it did injure them, and it – you know, whenever you shoot somebody with a gun, it very well could kill them; and so it's partially luck in this case that it wasn't a murder charge, that this was – that this was something less than that.

It is a very serious offense. The decision to pull the trigger of a gun while it's pointed at somebody else on purpose is – shows a level of violence that should be alarming to the Court. If the defendant was in a similar position in the future and acts in a similar way, it could have even more devastating consequences than this time.

So, Your Honor, it's for that reason that the State will recommend that the Court impose a term of incarceration not to exceed five years as well as a five year no-contact order with the victim. Thank you, Your Honor.

*State v. Wright*, FECR336442 (Iowa District Court for Polk County, Iowa), Sentencing Transcript, pages 3-6.[2]

Mr. Wright did give an allocution statement during the hearing. He said:

All right. Well, I would like to say I know the seriousness of the case and the charges that was against me, but I also know that I – I agree with the deferred judgment. I feel that that will be best for me.

I mean, I have no intentions or any – any reason to be out there doing anything that would even implicate me to even get involved, like, in something like this again, so that wouldn't even come up.

I'd rather just, you know, I'm doing – doing good working. I just filed articles of organization to start up a business. I plan on going further in my future, and this has no place in it. I wouldn't want to be back in a situation like this again, and I think that's the end of my statement.

THE COURT: I'm going to ask a question. You don't have to answer it, but I am

---

[2]The Transcript is attached with this brief as Exhibit B.

curious whether you've – you said you re trying to start a business.

THE DEFENDANT: Yeah.

THE COURT: Have you made any other changes in your life, or do you have any plans for changes to make in your life to avoid being in a situation like this again?

THE DEFENDANT: Well, part of that's also to avoid being around certain people because people could lead you to do negative things or things that you probably wasn't planning on doing. So, there's a lot of cutting off a lot of people that's not on to – on to the same focus that I have.

I focus more on working. Back then I was not working. Prior to me being in jail in Polk County, I was not working, just sitting at home. So, I'm –  that's the change I made. I'm working every day, staying to myself. Like I said, I'm hoping to start business. So I'm more business-minded.

There's no time for any frivolous activities, you know, ain't no hanging out or no doing this, none of that.

*Id.*, pages 20-22.

Judge Crane considered the matter and made the following decision concerning sentence:

Mr. Wright, I am going to give you the chance to prove that you are serious about changing the course of your life, and I'm going to enter a deferred judgment.

I am doing that with some reservation because I am particularly concerned that there was a gun involved in some form in this incident. I know you don't admit to shooting, and that's very clear, but I'm going to enter a deferred judgment. I'm going to place you on probation for a period of three years. I  am going to require the assaultive behavior class.

I'm also going to require you to maintain full-time employment or a full course of study.

It sounds like you've recognized that maintaining full-time employment is a way to – it alters the people that you're interacting with; it changes the way your time is allocated and can prevent people from making poor choices.

And I'm going to require you to complete community service. I think that can potentially give you some ideas of other more positive ways to interact with the community and also avoid this kind of situation in the future. So I'm going to

require you to complete 50 hours of community service. I'm just going to put that it has to be completed within the – within a year of today's order. I don't know what's available right now with the pandemic, the situation with the pandemic and whether there's things that they can find for you.

*Id*., pages 25-26.

Mr. Wright began serving his probationary period in Des Moines. No violations were noted or filed. On November 18, 2020 he was indicted in the present case for the events that had been charged and adjudicated in the Iowa District Court. He was charged with Conspiracy to Interfere with Commerce Through Robbery; Interference with Commerce through Robbery and Possessing, Brandishing and Discharging a Firearm in Furtherance of a Crime of Violence. The third count of the indictment carries a mandatory minimum ten year sentence, which must be served consecutive to any other sentence imposed. The Conspiracy charge in count 1 and the Robbery charge in count 2 each carries a maximum sentence of twenty years imprisonment with no minimum sentence.

Trial by jury began on September 13 ,2021. On September 14, 2021 Mr. Wright was found guilty of all counts of the indictment.

*B. Guidelines Calculations and Issues*. On the robbery charge the presentence report finds a base offense level of 20 (USSG § 2B3.1).[3] The report gives a six point increase for permanent or life-threatening bodily injury over the objection of the defendant. It also gives a two point increase for physical restraint, also over the objection of the Defendant. The parties agree that Mr. Wright's criminal history score is one, which is a criminal history category I. The report's finding of a total offense level 28, criminal category I results in a recommended guideline

_____

[3]The conspiracy and Hobbs Act charges are found in the report to be a closely related group, so that the guidelines will be discussed generally as the robbery charge.

sentence of 78-97 months, in addition to the mandatory minimum sentence of ten years. The

Government objected that this calculation may be insufficient as Mr. Wright may have intended

to murder Mr. Shoemaker. The probation office found insufficient evidence of this assertion.

Without the additional eight levels objected to by the Defendant, the guideline calculation

would be a total offense level 22, criminal history category I, or 41-51 months.[4] Several issues

must be decided to correctly apply the guidelines in this case.

*A. Bodily Injury*. USSG § 2B3.1 includes a specific offense characteristic for bodily

injury as follows:

| DEGREE OF BODILY INJURY | INCREASE IN LEVEL |
| --- | --- |
| (A) Bodily Injury | add 2 |
| (B) Serious Bodily Injury | add 4 |
| (C) Permanent or Life-Threatening Bodily Injury | add 6 |
| (D) If the degree of injury is between that specified in subdivisions (A) and (B); or | add 3 |
| (E) If the degree of injury is between that specified in subdivisions (B) and (C) | add 5 |

USSG § 2B3.1(b)(4). The increase is also limited by the fact that the cumulative adjustment from

the bodily injury, coupled with any increase for use of a weapon as a specific offense

characteristic, is not to exceed 11 levels. *Id*.; USSG § 2B3.1(b)(3).

What is known at this point is that Mr. Shoemaker was shot twice, ran out of the

apartment building and was taken to the hospital. He apparently was at least able to post on

---

[4]The evidence does show that Mr. Shoemaker suffered a bodily injury, which would be a two level increase under the Guidelines. USSG § 2B3.1(b)(4)(A).

Facebook about the offense the next day. Other than that, no other information has been given about the nature and extent of his injuries. His physical appearance at trial did not indicate that he suffered a permanent or life-threatening injury.

B. *Restraint*. The report finds a two level increase under USSG § 2B3.1(b)(4)(b) for physical restraint of the victim. "Physically restrained" means the forcible restraint of the victim such as by being tied, bound, or locked up. USSG § 1B1.1, comment. (n.1(K)). In this Circuit, the term has been found to encompass "situations where a defendant creates circumstances allowing a victim no alternative but compliance with his demand to restrain her movement.*" United States v. Stevens*, 580 F.3d 718, 721 (8th Cir. 2009). Here there was no forced compliance to either move to a different location or to restrict movement. *Cf.,* *United States v. Schau*, 1 F.3d 729, 730 (8th Cir. 1993). Restraint is a different concept and does not encompass every situation where there is physical contact during the course of the event. That is the reason that assault was not included in the list of items explaining the concept. USSG § 1B1.1, comment. (n.1(K)). In this case, the fact that Mr. Shoemaker fought back during this approximately five second interval is insufficient to support the enhancement.

C. *Evidence at Hearing.* Defendant does not anticipate the presentation of evidence at sentencing beyond the submissions filed with this memorandum.

## IV. ARGUMENT

*Determination of Sentence.* In deciding "whether to impose a term of imprisonment," the Court must "consider the factors set forth in § 3553(a) to the extent that they are applicable" to determine is what sentence "will be sufficient, but not greater than necessary, to comply with the purposes set forth" in Section 3553. 18 U.S.C. § 3553(a). Defendant's position is that a sentence

at the mandatory minimum of 120 months is appropriate in this case.

   *i. the nature and circumstances of the offense and the history and characteristics of the*
*defendant*. As noted in the objections to the report, the Court is in the best position to determine
the facts of the offense as the case did proceed to trial. This was a short trial where the question
for the jury to determine was whether Mr. Wright had been correctly charged. The jury's task
was to decide if the events happened during the course of one crime, a controlled substance
offense, or another, a robbery. That Mr. Shoemaker was shot during the course of one of these
two crimes was not at issue at trial.

   At sentencing the fact that he was injured while a crime was committed and that the
injury came as a result of the use of a firearm are of course important considerations. The
sentence on the firearms count requires at least ten years in prison. How much more is necessary
is the question.

   As the Court saw during trial, the time from when Shoemaker and the juvenile enter the
stairway to the time he runs out of the apartment building is only a few seconds. He described the
struggle that occurred with first the juvenile and then Mr. Wright during the course of those
seconds. A few frames of the surveillance video shows that struggle. It is during the course of
this brief time period that Mr. Shoemaker is shot in the arm and chest, and Mr. Wright is shot in
the hand.

   As the sentencing judge in the State case saw, there is much to think that Mr. Wright is
not only redeemable, but can be a positive, contributing member of the community. He is 26
years old, and his only previous criminal history was for selling a six pack of beer to a minor
while working as a store clerk at age 21.

He grew up without a father. From the age of nine he lived with his cousin. His family describe him as smart and creative. He wanted to start his own business, and worked a variety of jobs. His history indicates that, while he may have lacked resources, he wanted to better himself. The state allocution statement shows that he understands the changes needed to not allow this offense to define him for life and to change for the better.

   *ii. the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.* There is a long mandatory prison sentence which must be imposed. Any sentence will necessarily reflect the seriousness of the offense and provide adequate deterrence.

   In the current pandemic, Mr. Wright will face severe challenges in obtaining training and treatment within the Bureau of Prisons. His conditions of confinement will also be significantly different. Since March 13, 2020, BOP modified its operations to respond to the spread of COVID-19. This has included limiting movement of inmates, who are secured in their assigned cells/quarters to decrease the spread of the virus. Family and friends have been prohibited from visiting.  Programming, absent select UNICOR operations, has mostly ceased and movement throughout the facilities is suspended or severely limited. The Bureau has indicted that programming is offered, "to the extent practicable." In practice, this has mean that programming has been deferred or halted. Don Hummer (2020): *United States Bureau of Prisons' Response to*

*the COVID-19 Pandemic*, Victims & Offenders, page 8.[5] Currently no facilities have "minimal" or "moderate" modifications. All 98 facilities currently are under "intense modifications" due to the pandemic response.[6]

At some facilities, once someone tests positive for the virus, they are put in solitary confinement. "There are 4,377 federal inmates and 928 BOP staff who have confirmed positive test results for COVID-19 nationwide. Currently, 42,491 inmates and 8,944 staff have recovered. There have been 275 federal inmate deaths and 7 BOP staff member deaths attributed to COVID-19 disease." *Id.* This is in spite of the fact that the Bureau has administered 282,378 doses of vaccine. *Id.*

It is clear that Mr. Wright's conditions of confinement have been, and will continue to be, much harsher because of the current situation.

*iii. the kinds of sentences available*. The sentencing ranges and mandatory minimum sentence has been previously discussed.

*iv. the kinds of sentence and the sentencing range established the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines*. The guidelines provide for only one kind of sentence in this matter – imprisonment. The guideline issues have been previously discussed. Whether the guideline range found by the Court after review of all of the facts of this case are "sufficient but not greater than necessary" is the ultimate issue in this case.

---

[5]The article can be found at:
https://www.tandfonline.com/action/showCitFormats?doi=10.1080/15564886.2020.1829765

[6]See, https://www.bop.gov/coronavirus/

*v. any pertinent policy statement issued by the Sentencing Commission.* No traditional departures under the guidelines have been asserted in this case.

*vi. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.* Whatever the Court decides is the appropriate sentence, there will be disparities from how Mr. Wright is treated from the vast majority of others similarly situated. If for no other reason, a vanishingly small proportion of robbery offenders end up charged with a Federal crime. The Department of Justice Bureau of Justice Statistics reports the number of robberies in the United States as follows:

| | |
|---|---|
| 2016 | 458,810 |
| 2017 | 613,840 |
| 2018 | 575,100 |
| 2019 | 534,420 |
| 2020 | 437,260 |

Department of Justice, Bureau of Justice Statistics, Criminal Victimization, 2020, Table 1, page 2.[7] During the same time period, the number of robbery defendants in the Federal system were:

| | |
|---|---|
| 2016 | 1,608 |
| 2017 | 1,559 |
| 2018 | 1,722 |
| 2019 | 1,824 |
| 2020 | 1,316[8] |

---

[7]The report can be found at:
https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/cv20.pdf

[8]The data is derived from the United States Sentencing Commission Interactive Data Analyzer, found at:
https://ida.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FIDA%2F_portal%2FIDA%20Dashboards. Note that there is a small difference from the number reported by the Commission *infra* in another publication.

The second thing to note is the distortion caused by the charging decision to include the § 924(c) count in this case. The robbery guideline has a base offense level of 20. USSG § 2B3.1(a). Discharge of a firearm is a specific offense characteristic which calls for an increase of seven levels. USSG § 2B3.1(b)(3)(I). The guideline provides that the cumulative adjustments for use of a weapon and resulting injury cannot exceed 11 levels. USSG § 2B3.1(b)(4).

At a criminal history category one, this means that the discharge of a firearm increases the offense level from 20 to 27, which changes the guideline range from 33-41 months to 70-87 months. USSG, Ch. 5, Pt. A. A maximum 11 level increase when combined with the adjustment for injury changes the guideline range from 20 to 31, or from 33-41 months to 108-135 months. *Id.* At the maximum, the robbery guideline recommends a sentence for use of a firearm and resulting injury which would reach the mandatory minimum for the weapons offense alone at the middle of the top guideline range.

The guideline solution if there is a § 924(c) conviction is to not give the specific offense characteristic for a weapon. USSG § 2K2.4, comment (n. 4).  But the mandatory addition of at least 120 months for the firearm conviction is much greater than not applying specific offense characteristic. That is especially true in the robbery guideline as the cumulative adjustments are limited. The sentencing disparity will *always* be driven by whether the Government sought conviction on the § 924(c) violation or not. That decision alone will drive the fact that some defendants will necessarily have disparate sentences from others.

The sentencing commission has found that the disparity does in fact appear in robbery

offenses. United States Sentencing Commission, *Quick Facts, Robbery Offenses, FY 2020.*[9] In FY 2020 1,297 cases were reported to the Commission that involved robbery. *Id.* Of those convicted, 37.7 percent were also convicted of a § 924(c) offense. *Id.* The Commission has reported that the average sentence for offenders without a § 924(c) conviction was 71 months. The average sentence with a § 924(c) conviction was 165 months. *Id.* Those numbers are consistent with FY 2019. United States Sentencing Commission, *Quick Facts, Robbery Offenses, FY 2019.*[10] In that year 40.7 percent of offenders were convicted of both offenses. The average was 72 months for those only convicted of a robbery offense versus 163 months for those with both convictions. *Id.*

It will also have an impact on those who decide to go to trial. The likelihood is greater that the firearms count would not be included for those who plead guilty and that those who choose to go to trial may well have the indictment amended to include the count.

The reality is that Mr. Wright is facing a greater sentence because of the charging decision in his individual case. Under the same set of facts, he would not be looking at a guideline sentence of far greater than 120 months in the absence of the weapons count. His sentence is not driven by the circumstances of the offense or his individual characteristics, but by the fact that he was convicted of three charges rather than two. His sentence will carry an unwarranted sentence disparity from other defendants with similar records who have been found

---

[9]The document can be found at:
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Robbery_FY20.pdf

[10]The document can be found at:
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Robbery_FY19.pdf

guilty of similar conduct, but not the 924(c) offense. This subset of federal defendant is, of course, a minuscule percentage of the defendants charged with similar conduct generally in this country. The question is not whether it will occur, it is what to do to ameliorate that disparity.

The second issue which will differentiate Mr. Wright from others is the fact that he chose to exercise his right to trial.  That make him part of a small minority of defendants. Jury trials are now less than three percent of the cases in state and federal courts. *The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It,* National Association of Criminal Defense Lawyers (2018).[11] Since 2016, criminal trials have declined twenty four percent in the federal system. Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2020 Annual Report of the Director. In 2018 criminal filings had increased 13 percent but the number of jury trials rose only 4 percent. Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2018 Annual Report of the Director.[12] In 2019 there was a 6 percent increase in criminal filings with a four percent increase in jury trials. Administrative Office of the United States Courts, Judicial Business of the United States Courts: 2019 Annual Report of the Director.[13] By contrast, fifteen percent of federal cases went to trial in 1970. Hindelang, Criminal Justice Research Ctr., Univ. at Albany, *Sourcebook of Criminal Justice Statistics Online,* tbl.5.22.2010 (Kathleen Maguire

---

[11]The full report can be found at:
https://www.nacdl.org/Document/TrialPenaltySixthAmendmentRighttoTrialNearExtinct

[12]The report can be found at:
https://www.uscourts.gov/statistics-reports/us-district-courts-judicial-business-2018

[13]The report can be found at:
https://www.uscourts.gov/statistics-reports/us-district-courts-judicial-business-2019

ed.).[14]

One reason that is commonly given for the decrease in jury trials is the increase in sentence which occurs if unsuccessful compared to a plea of guilt.  This is in part a structural problem of criminal statutes, as Justice Kennedy noted:

> The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours 'is for the most part a system of pleas, not a system of trials,' [citation omitted], it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. 'To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it is the criminal justice system.' Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992). See also Barkow, Separation of Powers and the Criminal Law, 58 Stan. L. Rev. 989, 1034 (2006) ('[*Defendants] who do take their case to trial and lose receive longer sentences than even Congress or the prosecutor might think appropriate, because the longer sentences exist on the books largely for bargaining purposes.* This often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial' (footnote omitted)). In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.

*Missouri v. Frye*, 566 U.S. 134, 143-44 (2012)(emphasis added).

In the current guidelines system, the reduction in offense levels for acceptance of responsibility has become an institutional decrease for the decision to plead guilty rather than go to trial. The original guideline provided:

§ 3E1.1. Acceptance of Responsibility

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance

---

[14]The table can be found at:  available at
http://www.albany.edu/sourcebook/pdf/t5222010.pdf

of personal responsibility for the offense of conviction, reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section *without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury* or the practical certainty of conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

USSG § 3E1.1 (1987)(emphasis added).

The commentary at the time made clear that this was not a reduction to be given simply

for not going to trial:

2. *Conviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial*. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

3. A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section.

*Id*., comment, (n. 2, 3)(emphasis added).

The commission changed the commentary with amendment 351, deleting the original with the

following:

2. *This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse*. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a

19

determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

> *3. Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section.* However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

USSG, App. C, amendment 351 (1990)(emphasis added).

The amendment also importantly took away another important consideration. The background note originally said:

> The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense by taking, in a timely fashion, one or more of the actions listed above (or some equivalent action) is appropriately given a lesser sentence than a defendant *who has not demonstrated sincere remorse.*
>
> The availability of a reduction under § 3E1.1 is not controlled by whether the conviction was by trial or plea of guilty. Although a guilty plea may show some evidence of acceptance of responsibility, it does not automatically entitle the defendant to a sentencing adjustment.

USSG § 3E1.1, comment (backg'd) (1987).

After the amendment, contrition and remorse were no longer considerations. The second paragraph was also deleted in full, so that the availability began to be controlled by whether there was a trial or plea. The background comment now begins:

> The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates acceptance of responsibility for his offense by taking, in a timely fashion, the actions listed above (or some equivalent action) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility.

USSG § 3E1.1, comment (backg'd) (2021).

In 1992 the Commission allowed for a third point for acceptance, but deleted the portion of the guideline that a defendant may be given consideration "without regard to whether his conviction was based upon a guilty plea or a finding of guilt" and changing the language to:

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) *timely providing complete information to the government concerning his own involvement in the offense*; or

(2) *timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.*

USSG, App. C, amendment 459 (1992)(emphasis added).

By 2003 the guidelines limited the third point to cases where the Government filed a motion as they were "in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial." USSG, App. C, amendment 649.

The amendment was added as required by language in the Feeney Amendment to the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act. Pub. L. No. 108-21, 117 Stat. 650 (2003).

The objective of the Amendment is to reduce the role of the judiciary in formulating sentencing policy, in large part through further curtailing judicial discretion at sentencing. Though the Amendment achieves this goal primarily by diminishing judicial discretion to depart from the Guidelines range at sentencing, the Amendment's provisions viewed as a whole evidence a distrust of the federal trial bench. While the SRA viewed the judiciary as a cooperating participant in the evolution of federal sentencing law, the Feeney Amendment regards the trial bench as an enemy who must be carefully monitored to ensure compliance with the Guidelines.

O. D. Sanderford, *The Feeney Amendment, United States v. Booker, and New Opportunities for the Courts and Congress*, 83 N.C. L. Rev. 736, 738 (2005). This Circuit has recognized that as the PROTECT Act does not purport to limit a trial court's discretion under the sentencing statute and that later Supreme Court decisions have made clear that the amendment does not limit a Court in deciding the ultimate sentence. *United States v. Jimenez-Perez*, 659 F.3d 704, 710-11 (8th Cir. 2011). However, this portion of the amendment remains and has both limited the full extent of a reduction for acceptance to that requested by the Government and eroded the thought that anything other than not going to trial should be considered for this type of reduction.

The history of the acceptance guideline has turned from any initial thought that remorse and contrition should be a consideration or that it should be considered without regard to how guilt was decided. It has become an institution penalty for essentially everyone who wishes to exercise the right to a jury trial.

Mr. Wright's situation demonstrates the harm of this situation. He did in fact enter a guilty plea in state court to the greatest concern in this case – injuring Mr. Shoemaker. At sentencing he did express remorse and the desire to make amends through bettering himself and showing that he could make changes and be a positive influence in this community. But because he contested the specific Federal charges filed and actually had the Government prepare and go to trial – which is, of course, their job – he is automatically facing more time in prison.

The second trial penalty that he will face is a more insidious one. It is the unrestrained attempt to increase the guideline amount to the maximum amount possible and beyond because he went to trial. It is a legitimate question to ask if he had plead guilty, would the Government be aggressively seeking the two point increase for restraint? Or the full amount of the increase for

the injury to Mr. Shoemaker? With a plea would the Government file an objection to the presentence report that an increase of sentence would be needed for attempt to murder beyond the guideline range? It would not be surprising in this case for the Government to ask for the top of the guideline range and beyond. Would that have occurred with a plea rather than a trial? This Court certainly has extensive experience and can consider the extent of that effect because of the method of finding guilt. One thing is true, none of this has anything to do with finding the minimum sentence necessary given the facts of this case and the life of Mr. Wright.

The point of the sentencing statute is to punish someone enough and no more for a crime. The baseline of what we do in sentencing has become the overwhelming amount of people who plead guilty. There is institutional favor given to reward those who plead guilty and allow for lesser sentences when certain guidelines are not aggressively pursued. None of that applies for those who want the right so fundamental that the Founders included it in two of the first ten amendments to the constitution, a jury trial.

Here Mr. Wright had a short trial with legitimate issues for a jury to decide. The Government pursued this matter after apparently deciding that a state court judge granting leniency and promoting rehabilitation rather than retribution was anathema to the national interest. Because of that decision his hope of proving himself and building a better future is delayed for years. But there is still hope for him. He is still young and has a future waiting for him.

Given all of the circumstances in this case, the guideline range does not meet the statute's requirement. A sentence that is sufficient but not greater than necessary is one of ten years.

*vii. the need to provide restitution to any victims of the offense.* Mr. Shoemaker has not

requested restitution.

## V. CONCLUSION

The factors to be considered, the facts of this unique case show that a sentence of 120 months is sufficient, but not greater than necessary, to meet the requirements of the statute and impose a just sentence.

Respectfully Submitted,

J. KEITH RIGG
317 Sixth Avenue, Suite 1300
Des Moines, Iowa 50309
Telephone: (515) 284-7930
Email: jkrigg@dwx.com
ATTORNEY FOR DEFENDANT

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record at their respective addresses disclosed on the pleadings on January 15, 2022 through electronic service via CM/ECF.

Signature: _____